# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-19-00525-CV

**M. H., Appellant**

**v.**

**Texas Department of Family and Protective Services, Appellee**

---

**FROM THE 274TH DISTRICT COURT OF HAYS COUNTY**
**NO. 18-2091, THE HONORABLE MELISSA MCCLENAHAN, JUDGE PRESIDING**

---

## M E M O R A N D U M   O P I N I O N

This is an appeal from an order, following a bench trial, terminating the parental rights of M.H. (the father) and M.A.M. (the mother) to M.A.H. (the child). The father has appealed the order of termination. In a single issue on appeal, the father challenges the sufficiency of the evidence supporting the order of termination on two grounds: (1) he asserts that the evidence is insufficient to prove that he is a parent of the child; and (2) he claims that clerical errors in the order of termination demonstrate that the evidence is insufficient to prove that he committed two of the four predicate grounds for termination specified in the order. We will modify the district court's order of termination to correct the clerical errors and affirm the order as modified.

# BACKGROUND

The district court heard evidence that on August 15, 2018, San Marcos Police Department Officers Lance Cyrus and Gavin Gonzales responded to a report of a domestic disturbance at an apartment complex. Upon arrival, the officers observed the father and the mother walking out of their apartment and arguing with each other. According to Officer Gonzales, the father and the mother "were still kind of amped up, still verbally kind [of] shouting at each other," and had to be separated. Officer Cyrus described the disturbance as "an argument between maybe husband and wife, girlfriend [and] boyfriend." After the father and mother were separated, Cyrus interviewed the mother, who was holding a baby at the time. Cyrus became concerned for the baby's safety after the mother admitted that she had taken methamphetamines that night. Cyrus believed that the mother was under the influence of narcotics.

Gonzales interviewed the father, who explained that the argument began when the mother arrived home from a friend's house and accused the father of cheating on her. The father claimed that the mother had assaulted him during the argument by pushing and shoving him and "poking" him with a toothbrush in "the neck or torso area." The father acknowledged during the interview that he was on probation for assault family violence.[1]

The mother was arrested for assault. Before going to jail, the mother was transported to a hospital for medical evaluation. The medical records from the hospital visit, which were admitted into evidence, included a summary of conversations that the mother had with a social worker while the mother was at the hospital. The mother told the social worker that she and the father were using methamphetamines that night but that the mother did not use

_____

[1] A copy of the father's 2017 order of deferred adjudication for assault family violence, in which the father was placed on community supervision for five years, was admitted into evidence.

methamphetamines "on a regular basis." She claimed that she had used them that night to "please her husband." The mother informed the social worker that the father was physically and sexually abusive toward her and that he had hit and choked her the previous night. The medical records also reflect that the mother told the social worker "that she has a 2 y.o. daughter with her husband, [M.H.], and that is why she has left him and returned 2-3 times. He uses the child to get her to come back." It is undisputed that the mother's two-year-old daughter is the same child who is the subject of this suit.

Following the August 15, 2018, incident, the Department of Family and Protective Services (the Department) initiated this suit for protection of the child.[2] Tasha Patschke, a Department supervisor, testified that she interviewed the mother at the hospital, and the mother told her that the father had used cocaine and marijuana prior to the child's birth and had introduced the mother to methamphetamines. The mother also told Patschke that on the night of the incident, she and the father had used methamphetamines together while the child was present in the room with them.

While the case was ongoing, there was another incident involving the father and the mother. On February 24, 2019, San Marcos Police Department Officers Dilan Anderson and Casey Tennant responded to a 911 call "of a possible domestic-violence situation." Officer Anderson testified that when they arrived, the father was standing outside the apartment with his personal belongings. The father claimed that he and the mother had a "verbal altercation" and that "he was just trying to get his stuff and get out." The mother, who was crying and appeared "very distraught," told a different story. According to Anderson, "She told me that they left a bar

---

[2] This suit also involved other children with the same mother and a different father. The case involving those children was severed from this case.

3

in San Marcos and went to get something to eat. And while they were in the car, there was an altercation between her and [the father]" that became physical. Anderson observed injuries on the mother that were consistent with her story, specifically "numerous cuts and bruises on her arms." Additionally, two individuals who were with the father and the mother at the time of the incident corroborated the mother's version of events. The father was arrested that night for assault family violence and remained incarcerated for that offense at the time of trial.

Payton Tatsch, a Department caseworker, testified that the Department was concerned with the mother's "cycle of domestic violence" and the father's "substance use, as well as his domestic violence." Tatsch added, "There's been several incidents in the past where he's been arrested for assault charges. And that is a concern for someone raising a small child."

At the conclusion of trial, the district court found by clear and convincing evidence that the father and the mother had: (1) knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endangered the physical or emotional well-being of the child; (2) engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangered the physical or emotional well-being of the child; (3) constructively abandoned the child who had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months; and (4) failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child. *See* Tex. Fam. Code. § 161.001(b)(1)(D), (E), (N), (O). The district court also found that termination of the parent-child relationship between the parents and the child was in the best interest of the child. *See id*. § 161.001(b)(2). Based on its findings, the district court terminated the parental rights of the father and the mother. This appeal by the father followed.

4

## STANDARD OF REVIEW

The district court may order termination of the parent-child relationship "if clear and convincing evidence supports that a parent engaged in one or more of the [statutorily] enumerated grounds for termination and that termination is in the best interest of the child." *In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (per curiam) (citing Tex. Fam. Code § 161.001(b)). "Proceedings to terminate the parent-child relationship implicate rights of constitutional magnitude that qualify for heightened judicial protection." *In re A.C.*, 560 S.W.3d 624, 626 (Tex. 2018). "Because termination of parental rights 'is complete, final, irrevocable and divests for all time' the natural and legal rights between parent and child, a court cannot involuntarily sever that relationship absent evidence sufficient to 'produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established.'" *Id*. at 630 (quoting Tex. Fam. Code § 101.007; *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985)).

"The distinction between legal and factual sufficiency lies in the extent to which disputed evidence contrary to a finding may be considered." *Id*. "Evidence is legally sufficient if, viewing all the evidence in the light most favorable to the fact-finding and considering undisputed contrary evidence, a reasonable factfinder could form a firm belief or conviction that the finding was true." *Id*. at 631. "Factual sufficiency, in comparison, requires weighing disputed evidence contrary to the finding against all the evidence favoring the finding." *Id*. "In a factual-sufficiency review, the appellate court must consider whether disputed evidence is such that a reasonable factfinder could not have resolved it in favor of the finding." *Id*. "Evidence is factually insufficient if, in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id*.

**ANALYSIS**

**Evidence of parental status**

We first address the father's contention that the evidence is insufficient to prove that he is a parent of the child. The father did not contest his parental status in the court below but asserts on appeal that the Department failed to prove that he was the child's father.[3]

Termination of parental rights under Section 161.001 of the Texas Family Code requires the existence of a "parent-child relationship." *See* Tex. Fam. Code § 161.001(b); *In re F.M.*, 536 S.W.3d 843, 845 (Tex. App.—San Antonio 2017, no pet.). The statutory definition of "parent" includes a man presumed to be the father, a man legally determined to be the father, a man who has been adjudicated to be the father by a court of competent jurisdiction, and a man who has acknowledged his paternity under applicable law. Tex. Fam. Code § 101.024(a). In suits to terminate parental rights, paternity may be shown by evidence admitted at trial, judicial admissions, and pleadings and other documents in the court's file of which the court may take judicial notice. *See, e.g.*, *F.M.*, 536 S.W.3d at 845 (father-child relationship shown by statements contained in affidavit of alleged father); *P.M. v. Texas Dep't of Family & Protective Servs.*, No. 03-17-00337-CV, 2017 Tex. App. LEXIS 9316, at *4–5 (Tex. App.—Austin Oct. 4, 2017, no pet.) (mem. op.) (father-child relationship shown by pleadings and other documents in record, conduct of father during proceedings, and testimony of witnesses at termination hearing); *In re K.P.*, No. 09-13-00404-CV, 2014 Tex. App. LEXIS 9263, at *33–35 (Tex. App.—Beaumont Aug. 21, 2014, no pet.) (mem. op.) (father-child relationship shown by pleadings and arguments

---

[3] We note that in a civil case tried without a jury, a complaint regarding the legal or factual insufficiency of the evidence "may be made for the first time on appeal in the complaining party's brief." Tex. R. App. P. 33.1(d); *Office of the Att'y Gen. v. Burton*, 369 S.W.3d 173, 175 (Tex. 2012); *In re K.A.M.S.*, 583 S.W.3d 335, 349 (Tex. App.—Houston [14th Dist.] 2019, no pet.).

6

of father's counsel at termination hearing); *In re A.M.*, No. 07-96-0221-CV, 1997 Tex. App. LEXIS 1628, at *23–26 (Tex. App.—Amarillo April 1, 1997, no writ) (op., not designated for publication) (father-child relationship shown by father's statements acknowledging paternity and evidence that he had held himself out as children's father since their birth); *see also In re J.J.C.*, 302 S.W.3d 436, 446 (Tex. App.—Houston [14th Dist.] 2009, pet. denied) ("[T]he trial court is presumed to 'judicially know[] what has previously taken place in the case' tried before it, and the parties 'are not required to prove facts that a trial court judicially knows.'" (quoting *Vahlsing, Inc. v. Missouri Pac. R.R. Co.*, 563 S.W.2d 669, 674 (Tex. App.—Corpus Christi 1978, no writ))).

Here, the record reflects that throughout the proceedings, the father did not deny paternity and instead acted in a manner that was consistent with him being the father of the child. The Department's original petition for protection of the child requested that if the father appeared at the initial show-cause hearing and denied paternity, then the district court should order genetic testing. The record reflects that the father appeared in person at the initial show-cause hearing and announced ready. No genetic testing was ordered following the hearing, which supports a finding that the father did not deny paternity at that time. The father also appeared in person at subsequent hearings and announced ready. Nothing in the temporary orders following those hearings indicates that the father denied paternity at those hearings. Moreover, following the initial permanency hearing, the father filed an affidavit of indigence and requested court-appointed counsel, which supports a finding that the father wanted to contest the termination of his parental rights. The district court granted that request.

Additionally, the record includes a "Visitation Plan," signed by the father, that "documents the visitation schedule that the caseworker has developed with the parents." The

plan includes "Important Information for Parents About Visitation" and a "Note to Parents" that states, "While your children are in DFPS custody, you can have contact with them according to the plan outlined below, unless a court has ordered otherwise." The plan goes on to list the father and the child as "participants included in the visit" and outlines the terms of the father's visitation schedule. At the end of the document, there is a signature block that includes the following statement, "I participated in the development of this visitation plan and the Important Information for Parents about Visitation was reviewed with me. I understand the plan and the Important Information for Parents as written." Beneath that statement is a line for a "Parent Signature," and the father signed the document on that line. The record also reflects that the father attended at least one of the scheduled visits with the child.

During the bench trial, counsel for the father identified himself as "attorney for Respondent Father," and counsel contested the termination of the father's parental rights throughout the trial.[4] At one point during his questioning of a Department witness, counsel asked the witness, "Did you observe [the father's] last visit with his child?" At another point, counsel referred to the father as one of the "parents" of the child. During his closing statement, counsel argued that the father "desperately wants to be part of his child's life" and asked the court not to terminate the father's parental rights.

Additionally, the mother's medical records reflect that the mother told a social worker at the hospital "that she has a 2 y.o. daughter with her husband." The records identify

---

[4] Although the father was incarcerated at the time of trial, the record reflects that the district court bench-warranted the father before the trial began, remarking on the record that the father was "entitled to be here." Following a recess during which the father appeared to have been brought from the jail to the courtroom, the district court asked counsel, "[D]id you have an opportunity to visit with your client?" Counsel responded, "Yes, Your Honor." Thus, the record supports a finding that counsel was contesting the termination of the father's parental rights at the father's direction.

M.H. as the mother's husband, and the two-year-old daughter is the child subject of this suit. Also, a copy of the Department's Family Service Plan for the father, which named the father as a "parent" of the child, was admitted into evidence. Compliance with the plan was required for the father to obtain the return of the child, and one of the Department's witnesses provided testimony tending to show that the father engaged in some services and attempted to comply with the plan. This evidence supports a finding that the father wanted to be reunited with the child.

Viewing the above evidence in the light most favorable to the finding, we conclude that a reasonable factfinder could form a firm belief or conviction that the father was a parent of the child. Accordingly, the evidence is legally sufficient to support the district court's finding. Moreover, because there was no evidence presented at trial that was contrary to the finding, we also conclude that the evidence is factually sufficient to support the district court's finding.

**Clerical errors**

Within his sufficiency challenge, the father also complains of clerical errors in the order of termination. In the portion of the order providing for the termination of the father's parental rights, the order lists the four predicate grounds for termination that the father committed, specifically the actions described in Family Code Section 161.001(b)(1), subsections (D) (placing child in endangering conditions or surroundings), (E) (engaging in conduct that endangers child), (N) (constructive abandonment of child), and (O) (failure to comply with court order providing for return of child). However, in the descriptions of subsections (N) and (O), the order includes references to the mother.[5] The father asserts that because the order "erroneously

---

[5] Specifically, Paragraphs 7.2.3. and 7.2.4. of the order recite that the district court found by clear and convincing evidence that the father:

9

articulated" two of the four predicate grounds for termination, the evidence is insufficient to prove those grounds. In other words, according to the father, the errors indicate that the district court terminated the father's parental rights based on the mother's actions.

We disagree. At the conclusion of the bench trial, the district court pronounced that it had found by clear and convincing evidence that "both parents" had committed the predicate grounds for termination specified in subsections (D), (E), (N), and (O) of Section 161.001(b)(1) of the Family Code. Consistent with the district court's pronouncement, the order provides for termination of the parental rights of both the father and the mother, and it contains a separate section for each parent. The predicate grounds supporting termination of the mother's parental rights are listed in section six of the order, while the predicate grounds supporting termination of the father's parental rights are listed in section seven of the order. The grounds are identical in each section. Thus, it is apparent that the references to the mother in the father's

---

constructively abandoned the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months and: (1) the Department has made reasonable efforts to return the child to the *mother*; (2) the *mother* has not regularly visited or maintained significant contact with the child; and (3) the *mother* has demonstrated an inability to provide the child with a safe environment, pursuant to § 161.001(b)(1)(N), Texas Family Code; and

failed to comply with the provisions of a court order that specifically established the actions necessary for the *mother* to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse and neglect of the child, pursuant to § 161.001(b)(1)(O), Texas Family Code.

(emphasis added). Paragraphs 7.2.1. and 7.2.2. of the order, which recite that the district court found by clear and convincing evidence that the father endangered the child as specified in subsections (D) and (E), do not contain references to the mother.

10

section of the order are merely clerical errors that occurred while drafting the order. The clerical errors do not establish that the evidence is insufficient to prove that the father committed the predicate grounds for termination specified in subsections (N) and (O).

We overrule the father's issue on appeal.

**CONCLUSION**

Although the father is not entitled to a reversal of the order, we are authorized to modify orders to correct clerical errors when we have the necessary information to do so. *See* Tex. R. App. P. 43.2(b); *In re A.B.*, 458 S.W.3d 207, 210 (Tex. App.—Dallas 2015, pet. denied); *see also I.R.G. v. Texas Dep't of Family & Protective Servs.*, No. 03-18-00186-CV, 2018 Tex. App. LEXIS 3977, at *2–3 (Tex. App.—Austin June 5, 2018, no pet.) (mem. op.). Accordingly, we modify the district court's order of termination to replace the word "mother" with "father" in Paragraphs 7.2.3. and 7.2.4. of the order. As modified, the order of termination is affirmed.

_____

Gisela D. Triana, Justice

Before Chief Justice Rose, Justices Triana and Smith

Modified and, as Modified, Affirmed

Filed: January 8, 2020